UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LATONYA WILLIAMS,

        Plaintiff,                                      Hon. Robert J. Jonker

v.                                                             Case No. 1:13-CV-954

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.
_____/

## REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security

case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 28 years of age on her alleged disability onset date. (Tr. 140). She completed two years of college and worked previously as a fast food worker, waitress, and box folding machine operator. (Tr. 24, 36-37). Plaintiff applied for benefits on May 7, 2010, alleging that she had been disabled since January 22, 2010, due to obsessive-compulsive disorder (OCD), insomnia, depression, and back spasms. (Tr. 140-49, 169). Plaintiff's applications were denied, after which time she requested a hearing before an Administrative Law Judge (ALJ). (Tr. 70-138). On January 24, 2012, Plaintiff appeared before ALJ Douglas Johnson with testimony being offered by Plaintiff and a vocational expert. (Tr. 31-69). In a written decision dated May 10, 2012, the ALJ determined that Plaintiff was not disabled. (Tr. 14-26). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 1-5). Plaintiff subsequently initiated this pro se action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

Plaintiff's insured status expired on June 30, 2011. (Tr. 16). Accordingly, to be eligible for Disability Insurance Benefits under Title II of the Social Security Act, Plaintiff must establish that she became disabled prior to the expiration of her insured status. *See* 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

## RELEVANT MEDICAL HISTORY

On February 15, 2010, Plaintiff was examined by Physician's Assistant Joy Wisser. (Tr. 239). With respect to Plaintiff's objective allegations, Wisser reported the following:

> The patient is a 28-year-old female, who is here with mental health issues. The patient denies any significant treatment in the past. Evidently she has had some depression since a miscarriage in February of 2009 and was laid off her job. She states that she lays around all day and does essentially nothing. As for her meeting her bills her parents help her a lot. She states that she has an appointment and is on section VIII so she does not have to pay for her housing.

(Tr. 239). An examination revealed the following:

> General appearance: Affect is dysthymic. Mood depressed. Thoughts are organized. Rate and flow of speech are normal. Judgment and insight are intact. Throat: Thyroid normal. Lungs: Clear. Heart: Regular rate and rhythm. Abdomen: Normal. Musculoskeletal: No gross musculoskeletal deficit noted. Neurological: No gross neurological deficit noted. Extremities: No significant peripheral edema. Posterior tibialis pulses equal bilaterally.

(Tr. 239). Plaintiff was diagnosed with depression, prescribed medication and instructed to continue participating in counseling. (Tr. 239).

On April 19, 2010, Plaintiff was examined by Physician's Assistant Wisser. (Tr. 235). Plaintiff reported that she was experiencing insomnia and low back pain. (Tr. 235). A physical examination revealed the following:

> General appearance: The patient is alert and oriented. No distress. Lies down and sits up without difficulty. Back/Musculoskeletal: She has severe spasm in left upper trapezius and medial of the scapula significant paravertebral guarding throughout lumbar spine. Negative straight leg raise, but does have some hamstring and tightness, able to bend 90 degrees. Normal lateral bending and twisting with some pain involved. Normal gait and sta[n]ce.

(Tr. 235). Plaintiff was diagnosed with insomnia and "mild upper back and lower back strain" and her medication regimen was modified. (Tr. 235).

4

Treatment notes dated April 26, 2010, indicate that Plaintiff's "previous spasm is improving" and her "mood is stable." (Tr. 234). Treatment notes dated May 17, 2010, indicate that Plaintiff was "encouraged [to participate in] daily exercise for mental and physical health." (Tr. 318).

On July 20, 2010, Plaintiff participated in a consultive examination conducted by Laura Kracker, LLP. (Tr. 248-53). Plaintiff reported that she was disabled due to "back spasms, insomnia, OCD, and depression." (Tr. 248). Plaintiff "displayed a low self esteem," but otherwise the results of a mental status examination were unremarkable. (Tr. 250-51). Plaintiff was diagnosed with: (1) major depressive disorder, recurrent, moderate; (2) anxiety disorder, not otherwise specified. (Tr. 252). Plaintiff's GAF score was rated as 51.[1] (Tr. 252).

On July 23, 2010, Plaintiff participated in a consultive examination conducted by Dr. Tama Abel. (Tr. 255-57). Plaintiff reported that she was disabled due to "OCD, insomnia, depression, and back spasms." (Tr. 255). Plaintiff reported that she "is able to drive and is independent with her activities of daily living." (Tr. 255). Plaintiff also "estimates she can walk a mile without difficulty." (Tr. 255). A physical examination revealed the following:

> Vital Signs: Blood Pressure: Right arm: 116/80 and Left Arm: 112/80. Pulse: 96 and regular. Respiration: 12. Weight: 186 lbs. Height: 66 in. (no shoes). BMI: 30.0.
>
> General: The patient was cooperative throughout the exam. Hearing appeared normal and speech was clear. Gait was normal. The patient did not use an assistive device for ambulation.

---

[1] The Global Assessment of Functioning (GAF) score refers to the clinician's judgment of the individual's overall level of functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 1994) (hereinafter DSM-IV). A GAF score of 51 indicates "moderate symptoms or moderate difficulty in social, occupational, or school functioning." DSM-IV at 34.

Skin: There were no obvious lesions appreciated, nor was there cyanosis or clubbing.

Eyes: Visual Acuity: Right eye 20/20 and Left eye 20/20, without glasses. The sclerae were not icteric.

Neck: Neck appeared supple without apparent masses.

Chest: AP diameter was grossly normal. Lungs were clear to auscultation without any adventitious sounds.

Heart: Heart did not appear to be clinically enlarged. No murmurs or gallops were appreciated. S1 and S2 appeared normal.

Abdomen: Abdomen was obese. There were no masses felt, nor was there apparent organomegaly.

Extremities and Musculoskeletal: There was no tenderness, erythema, effusion noted of any joint. Grip and pincher strength was intact. Dexterity appeared unimpaired. There was no edema. She had no difficulty getting on and off the examination table, heel and toe talking, squatting and arising, and hopping. Range of motion testing of all affected joints was performed, with the results as follows:

| Dorsolumbar Spine | Normals | Range of Motion Today |
| --- | --- | --- |
| Flexion | 0° - 90° | 0° - 90° |
| Extension | 0° - 25° | 0° - 25° |
| Right Lateral Flexion | 0° - 25° | 0° - 25° |
| Left Lateral Flexion | 0° - 25° | 0° - 25° |

Neuro: Motor and sensory function appeared intact. Straight leg raising was positive in the supine position, as she complained of back pain. No radiating pain was elicited. No disorientation was noted.

(Tr. 256).

Dr. Abel concluded that Plaintiff was experiencing "back pain" which "appeared to be a combination of musculoskeletal pain and degenerative disc disease. (Tr. 257). The doctor further noted, however, that "no evidence of nerve root irritation was appreciated." (Tr. 257).

Treatment notes dated January 18, 2011, indicate that Plaintiff's medication "seems to be working for her insomnia." (Tr. 315). Treatment notes dated March 24, 2011, indicate that Plaintiff's depression and OCD were responding to medication. (Tr. 314).

On January 6, 2012, Plaintiff reported to the emergency room complaining of "a sudden onset of what is described like a shaking all over" which "lasted maybe for about 5 minutes." (Tr. 276-77). A urine screen was "positive for benzodiazepine and opiates." (Tr. 276). X-rays of Plaintiff's chest revealed "no acute process." (Tr. 280). A CT examination of Plaintiff's head revealed "no evidence of acute intracranial hemorrhage, mass, or definite territorial infarction." (Tr. 281).

On January 11, 2012, Plaintiff was examined by Physician's Assistant Glenn Groom. (Tr. 291-92 ). Plaintiff reported that she was experiencing back pain for which she requested a prescription of narcotic pain medication. (Tr. 291). A physical examination revealed the following:

> General appearance: The patient is alert and oriented. . .in no acute distress, answers all questions appropriately. HEENT: Head: Atraumatic and normocephalic. Eyes: EOMs intact. PERRLA bilateral. No icterus or injection noted. Lungs: Clear to auscultation bilaterally. Equal rise and fall. No distress. Heart: Regular rate and rhythm without murmur, rub, or gallops. Abdomen: Sort, nontender, and nondistended. She does have some suprapubic tenderness. No guarding or rebound tenderness noted. Musculoskeletal: The patient has increased discomfort to palpation across the sacroiliac region of her spine. She has no sciatic notch pain. No lateral hip pain with palpation. She does have slow, but normal range of motion with flexion, extension in all ranges. Negative straight leg raise bilaterally. Patellar tendons 2+ bilaterally. Neurological: The patient's cranial

7

>       nerves II through [X]II grossly intact.  Skin: Pink, warm, and dry.
>       Good turgor.  No cyanosis.

(Tr. 291).  Plaintiff was diagnosed with "lumbosacral sprain and strain" for which she was given pain medication as well as instructions to participate in "stretching regimens" to alleviate her discomfort. (Tr. 292).

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability.  *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[2]  If the Commissioner can make a dispositive finding at any point in the review, no further finding is required.  *See* 20 C.F.R. §§ 404.1520(a), 416.920(a).  The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity.  *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience,

---

[2] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

perform any other substantial gainful employment existing in significant numbers in the national economy. See 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

   The ALJ determined that Plaintiff suffered from: (1) major depressive disorder, recurrent, moderate; (2) anxiety disorder with aspects of generalized anxiety disorder; (3) panic attacks; (4) obsessive-compulsive disorder; and (5) chronic lumbosacral strain/sprain, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 17-18).

   With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform work subject to the following limitations: (1) she can lift/carry 20 pounds occasionally and 10 pounds frequently; (2) she can stand, walk, and sit for 6 hours each during an 8-hour workday with normal breaks; (3) she can occasionally stoop, kneel, crouch, crawl, and climb stairs; (4) she cannot work in crowds or deal with the public; (5) she must work in a clean environment; (6) she can only occasionally interact with co-workers and supervisors; and (7) she is limited to jobs requiring the ability to understand, remember, and carry out short, simple instructions. (Tr. 18).

The ALJ determined that Plaintiff could not perform her past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, her limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned a vocational expert.

The vocational expert testified that there existed in the state of Michigan approximately 19,000 jobs which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 61-66). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374 (6th Cir., Mar. 1, 2006). The vocational expert further testified that if Plaintiff were further limited in that she required a sit/stand option and could walk/stand only two hours daily there still existed approximately 7,500 jobs in the state of Michigan which she could perform. (Tr. 66-67). Accordingly, the ALJ denied Plaintiff's claim for benefits.

I.          **Plaintiff is Not Entitled to a Sentence Six Remand**

As part of her request to obtain review of the ALJ's decision, Plaintiff submitted to the Appeals Council additional evidence which was not presented to the ALJ. (Tr. 1-5, 320-27). The Appeals Council received the evidence into the record and considered it before declining to review the ALJ's determination. Plaintiff has also submitted to this Court additional evidence that likewise was not presented to the ALJ. (Dkt. #21). The only claim that Plaintiff asserts in her pro se appeal is that the Court consider this evidence and re-assess her claim for benefits.

This Court, however, is precluded from considering such material. *See, e.g., Cline v. Commissioner of Social Security*, 96 F.3d 146, 148 (6th Cir. 1996); *Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007). If Plaintiff can demonstrate, however, that this evidence is new and material, and that good cause existed for not presenting it in the prior proceeding, the Court can remand the case for further proceedings during which this new evidence can be considered. *Cline*, 96 F.3d at 148. To satisfy the materiality requirement, Plaintiff must show that there exists a reasonable probability that the Commissioner would have reached a different result if presented with the new evidence. *Sizemore v. Secretary of Health and Human Serv's*, 865 F.2d 709, 711 (6th Cir. 1988). Plaintiff bears the burden of making these showings. *See Hollon ex rel. Hollon v. Commissioner of Social Security*, 447 F.3d 477, 483 (6th Cir. 2006).

Even if the Court assumes that Plaintiff can establish good cause for her failure to timely present the evidence in question, it is not reasonable to conclude that consideration of such would lead to a different result. The evidence submitted to the Appeals Council consists of two functional capacity evaluations. (Tr. 320-27). The assessment concerning Plaintiff's non-exertional impairments is not necessarily inconsistent with the ALJ's RFC determination. (Tr. 321-23). While

the assessment of Plaintiff's physical abilities suggests that Plaintiff is more limited than the ALJ recognized, such enjoys no support in the medical record. (Tr. 324-27). Moreover, there is no indication that the individual who completed this particular assessment is a medical doctor whose opinion is entitled to any deference. As for the additional evidence which Plaintiff has submitted to this Court, such is not inconsistent with the ALJ's RFC determination. (Dkt. #21). Specifically, this evidence reveals that Plaintiff is experiencing "early degenerative changes" of her lumbosacral spine, "mild" pulmonary impairments, and, has been experiencing seizures which are controlled with medication. (Dkt. #21). The Court recommends, therefore, that Plaintiff is not entitled to remand.

## **CONCLUSION**

For the reasons articulated herein, the undersigned concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within such time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date:  November 24, 2014            /s/ Ellen S. Carmody
                                    ELLEN S. CARMODY
                                    United States Magistrate Judge